ACCEPTED
01-14-00650-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/22/2015 2:02:04 PM
CHRISTOPHER PRINE
CLERK

## Cause No. 01-14-00650-CV

_____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/22/2015 2:02:04 PM

CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF TEXAS
## HOUSTON, TEXAS

_____

### OSCAR D. TAYLOR AND DENISE TAYLOR
*Appellants/Cross-Appellees,*

**v.**

### ADRIENNE A. HENNY AND DAMON K. HENNY
*Appellees/Cross-Appellants.*

_____

On Appeal from the 152nd Judicial District of Harris County, Texas
Cause No. 2008-40075

_____

### RESPONSE OF CROSS-APPELLEES/APPELLANTS

_____

Douglas Pritchett, Jr.
State Bar No. 24007877
dpritchett@johnsontrent.com
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam Street, Suite 1700
Houston, Texas 77002
(713) 222-2323 (Telephone)
(713) 222-2226 (Facsimile)

**ATTORNEY FOR APPELLANTS
OSCAR D. TAYLOR AND
DENISE TAYLOR**

## STATEMENT CONCERNING ORAL ARGUMENT

Counsel for Appellants/Cross-Appellees agree that no argument is needed on the cross appeal. Cross-Appellants have waived error on all of the alternative grounds for affirmance on their claims for tortious interference, the application of the statute of limitations to Damon Henny's claims, and lost profits. There is no need for the Court to even consider the merits of the arguments that have been presented or of Cross-Appellees' arguments on the merits.

# TABLE OF CONTENTS

**Page**

STATEMENT CONCERNING ORAL ARGUMENT .............................................i

INDEX OF AUTHORITIES.............................................................................v

CROSS-POINTS...........................................................................................ix

STATEMENT OF FACTS .............................................................................1

SUMMARY OF THE ARGUMENT .................................................................4

ARGUMENT ...............................................................................................5

I.  FAILURE TO CHALLENGE ALL POSSIBLE GROUNDS FOR
    AFFIRMANCE IS WAIVER, AND THE CHALLENGED RULINGS
    MUST BE AFFIRMED ...........................................................................5

    A.  The Taylors Challenged the Jury Verdict for
        Tortious Interference with Contract on Multiple
        Grounds ...................................................................................7

    B.  Even if There Were Some Evidence of Lost
        Profits, the Verdict Still Must Be Disregarded on
        the Other, Unchallenged Grounds ............................................8

    C.  The Judgment Against Damon Henny Must Be
        Affirmed on the Alternative, Unchallenged
        Grounds ................................................................................10

II. IF THE MERITS OF THE HENNYS' APPELLATE ISSUES ARE
    CONSIDERED, THE JUDGMENT STILL MUST BE AFFIRMED.........................11

    A.  The Tortious Interference Claim Was Properly
        Dismissed .............................................................................11

        1.  There is no evidence of intentional
            interference .....................................................................11

2. Causing a person to exercise a contractual right is not interference ..................................13

3. There is no evidence that the Hennys suffered damages as a result of the alleged interference.................................................14

B. Damon Henny's Claims Were Not Asserted until Trial, Long after Limitations Had Expired .........................15

C. Adrienne Henny did Not Establish Lost Profits with the Necessary Specificity ...............................18

1. There is legally insufficient evidence of lost profits .................................................18

2. Even if the Taylors should have executed the assignment, the Asset Purchase Agreement still would have failed ...........................20

III. ALTERNATIVELY, THE JUDGMENT SHOULD BE AFFIRMED ON THE OTHER GROUNDS SUBMITTED BY THE TAYLORS ................................23

A. Plaintiffs' Tortious Interference Claims Are Not Viable .........................................................23

1. Plaintiffs' claims sound in contract, not in tort ..................................................23

2. The Hennys had no standing to assert the tortious interference claim .......................................24

B. None of Damon Henny's Claims Are Viable ...................................25

1. Damon Henny did not plead any claims ..................................25

2. There was no breach; the Separation Agreement did not require the Taylors to sign the Weingarten documents ..............................26

iii

3.     There is no causation when the harm would have occurred regardless of the Taylors' actions ...............................................................28

4.     Because the Bayou Cafe's option expired before the Taylors were asked to execute the documents, there is no causation .............................................29

5.     Damon Henny could not establish damages for loss of credit or for mental anguish...................................29

C.     Adrienne Henny Cannot Recover the Lost Profits Verdict.............................................................................31

IV.    ALTERNATIVELY, THERE IS NO FACTUALLY SUFFICIENT EVIDENCE SUPPORTING THE JURY'S VERDICT, AND A NEW TRIAL IS NECESSARY ...................................................32

A.     There Was No Factually Sufficient Evidence that the Taylors Tortiously Interfered with the Asset Purchase Agreement..........................................................33

B.     There Was No Factually Sufficient Evidence to Support the Jury's Verdict of Lost Profits ...........................34

C.     There Was No Factually Sufficient Evidence to Support the Jury's Verdict in Favor of Damon Henny ..................................................................35

PRAYER...................................................................................................35

CERTIFICATE OF COMPLIANCE.......................................................38

CERTIFICATE OF SERVICE ................................................................38

iv

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*$27,877.00 Current Money of U.S. v. State*,
   331 S.W.3d 110 (Tex. App.—Fort Worth 2010, pet. denied).......................31, 32

*ACS Investors, Inc. v. McLaughlin*,
   943 S.W.2d 426 (Tex. 1997) .......................................................13, 14

*Control Solutions, Inc. v. Gharda USA, Inc.*,
   394 S.W.3d 127 (Tex. App.—Houston [1st Dist.] 2012, pet. filed) ..................17

*Cram Roofing Co., Inc. v. Parker*,
   131 S.W.3d 84 (Tex. App.—San Antonio 2003, no pet.) ..................................17

*Crawford v. Ace Sign, Inc.*,
   917 S.W.2d 12 (Tex. 1996)..........................................................................24

*Delgado v. Methodist Hosp.*,
   936 S.W.2d 479 (Tex. App.—Houston [14th Dist.] 1996, no writ)...................30

*DeWitt County Elec. Coop. v. Parks*,
   1 S.W.3d 96 (Tex. 1999).............................................................................23

*Employees Retirement Sys. of Tex. v. Putnam, LLC*,
   294 S.W.3d 309 (Tex. App.—Austin 2009, no pet.)...................................21, 28

*ERI Consulting Engineers, Inc. v. Swinnea*,
   318 S.W.3d 867 (Tex. 2010) .................................................................19, 20, 22

*Exxon Mobil Corp. v. Kinder Morgan Oper. L.P.*,
   192 S.W.3d 120 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ...................23

*First Nat'l Bank v. Levine*,
   721 S.W.2d 287 (Tex. 1986) .......................................................................15

*Holt Atherton Indus., Inc. v. Heine*,
   835 S.W.2d 80 (Tex. 1992)..........................................................................19

*Jackson v. Henderson*,
   2004 WL 1631394 (Tex. App.—Houston [1st Dist.]
   July 22, 2003, no pet.)..............................................................................21, 28

*Kenneth H. Hughes Interests, Inc. v. Westrup*,
   879 S.W.2d 229 (Tex. App.—Houston [1st Dist.] 1994,
   writ denied) .........................................................................................................24

*Lopez v. Muñoz, Hockema & Reed, L.L.P.*,
   22 S.W.3d 857 (Tex. 2000)...............................................................................16

*MasTex N. Am., Inc. v. El Paso Field Servs., L.P.*,
   317 S.W.3d 431 (Tex. App.—Houston [1st Dist.] 2010),
   rev'd on other grounds, 389 S.W.3d 802 (Tex. 2012).................................6, 7, 8

*Mead v. Johnson Group, Inc.*,
   615 S.W.2d 685 (Tex. 1981) .............................................................................28

*Milestone Props., Inc. v. Federated Metals Corp.*,
   867 S.W.2d 113 (Tex. App.—Austin 1993, no writ) .........................................17

*Moore v. Memorial Hermann Hosp. Sys.*,
   140 S.W.3d 870 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ...................31

*Nall v. Plunkett*,
   404 S.W.3d 552 (Tex. 2013) ...........................................................5, 6, 8, 9, 10

*Provident Am. Ins. Co. v. Casteneda*,
   988 S.W.2d 189 (Tex. 1998) .............................................................................30

*Ritchie v. Rupe*,
   443 S.W.3d 856 (Tex. 2014) .............................................................................34

*Saenz v. Fidelity & Guar. Ins. Underwriters*,
   925 S.W.2d 607 (Tex. 1996) .............................................................................15

*Singh v. Duane Morris, L.L.P.*,
   338 S.W.3d 176 (Tex. App.—Houston [14th Dist.] 2011,
   pet. denied)..........................................................................................................24

*Soukup v. Sedgwick Claims Mgmt. Servs.*,
   2012 WL 3134223 (Tex. App.—Houston [1st Dist.] Aug. 2, 2012,
   pet. denied)..........................................................................................................30

*Southwestern Bell Tel. Co. v. DeLanney*,
809 S.W.2d 493 (Tex. 1991) ..............................................................................23

*Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*,
843 S.W.2d 470 (Tex. 1992) ..............................................................................12

*St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*,
974 S.W.2d 51 (Tex. 1998).................................................................................30

*State Farm Fire & Cas. Co. v. Morua*,
979 S.W.2d 616 (Tex. 1998) ..............................................................................32

*Stine v. Stewart*,
80 S.W.3d 586 (Tex. 2002).................................................................................15

*Texas Instruments, Inc. v. Teletron Energy Mgmt.*,
877 S.W.2d 276 (Tex. 1994) ..............................................................................19

*Tiller v. McLure*,
121 S.W.3d 709 (Tex. 2003) ....................................................................32, 33, 34

*Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*,
332 S.W.3d 395 (Tex. 2011) ..............................................................................17

*Voss Road Exxon LLC v. Vlahakos*,
2011 WL 2623989 (Tex. App.—Houston [1st Dist.]
June 30, 2011, no pet.)....................................................................22, 24, 29

*Wingate v. Hajdik*,
795 S.W.2d 717 (Tex. 1990) ......................................................................22, 24

**Statutes**

TEX. BUS. ORG. CODE § 2.101 ...........................................................................25

TEX. BUS. ORG. CODE § 3.103..............................................................................13

TEX. CIV. PRAC. & REM. CODE §§ 16.003(a), 16.051 ...........................................15

**Rules**

TEX. R. APP. P. 38.1(f) .........................................................................................5

TEX. R. APP. P. 44.1(b)..........................................................................................34

TEX. R. CIV. P. 193.6...................................................................................32

TEX. R. CIV. P. 193.6(a) ...........................................................................31

TEX. R. CIV. P. 194...................................................................................31

# CROSS-POINTS

1. The Hennys have waived consideration of the Taylors' alternative grounds presented in the motion for judgment notwithstanding the verdict as to tortious interference, the claims by Damon Henny, and the lost profits damages.

2. The judgment dismissing the tortious interference claims, all of Damon Henny's claims, and Adrienne Henny's claim for lost profits should be affirmed on the merits of the Taylors' alternative grounds presented in the motion for judgment notwithstanding the verdict.

3. There is factually insufficient evidence to support the jury's verdict finding tortious interference and damages resulting from such interference.

4. There is factually insufficient evidence to support the jury's verdict of lost profits by Adrienne Henny.

5. There is factually insufficient evidence to support the jury's verdict in favor of Damon Henny.

## STATEMENT OF FACTS

The sticking point in this dispute was the lease for the Kirby location of what became the Bayou Cafe. Cayennes Restaurant, Inc. ("Cayennes") signed a five year lease on the Kirby location on November 10, 2003. DX4:10RR2. It was not a ten year lease, and it was set to expire in early 2009. *Id.* The ten year lease mentioned by the Hennys in their statement of facts was the lease for the FM 1960 location. DX2:8RR2 (primary address is 4551 FM 1960 West).

There is no disagreement that in 2005, the Hennys and the Taylors fell into a dispute about Denise Taylor's management of Cayennes Restaurants. There was a genuine disagreement concerning the facts of that dispute as follows. The Hennys claim that Denise Taylor, who quit her job to manage the restaurants, gave herself a raise without their knowledge. The Taylors pointed out that Adrienne Henny signed the paychecks and, therefore, must have approved it either explicitly or tacitly or, at the very least, been aware of it and had not objected. 3RR129-31. The Hennys and Taylors resolved this dispute in the Separation Agreement. PX2:7RR2-4.

The Hennys would divert this Court into jury argument. They attack Denise Taylor's reputation concerning the 2005 dispute (1) that was resolved in the Separation Agreement; (2) that could not have been litigated in this case not only because it had been resolved but also because it was far beyond any applicable

1

statute of limitations; and (3) about which no fact findings were made by or presented to the jury. The facts of the 2005 dispute have no relevance here.

What is relevant here are the terms of the 2005 Separation Agreement. Those terms are best understood by reading the actual language of the Agreement, not the paraphrased version set out in the Hennys' statement of facts. Thus, there was no agreement to "work together," and "work with all third parties to effectuate these transfers." Cross-Appellants' Brief at 9. Rather, each party agreed to go their own separate ways:

> Oscar and Denise Taylor will operate, manage and own Cayenne's Restaurant located on Woodforest Boulevard without interference from any other party. Damon and Adrienne Henny will operate manage and own Cayenne's Restaurant located on Kirby and the Cayenne's Restaurant located at FM 1960 without interference from any party.
>
> . . .
>
> [A]ll administrative changes . . . will be completed by February 1, 2006.
>
> . . .
>
> After March 31, 2006 no party will use the Cayenne's Restaurant name, identity or logo in any form.
>
> . . .
>
> [A]ll parties will assume operation, management, administration and ownership of the respective restaurants as indicated herein upon approval of this document or 12:00 a.m. on January 18, 2006, whichever is first.

PX1:7RR2.

2

Contrary to this agreement, the Bayou Cafe (and the Hennys) continued to use the Cayennes name by operating under the original leases for the Kirby and FM 1960 locations through 2008. 3RR89; DX2:8RR2; DX4:10RR2. Rather than "effectuat[ing] the final separation," *see* Cross-Appellants' Brief at 11, the Hennys proposal would have extended the use of the Cayennes' name for five more years. DX17:10RR69, 80. That the Hennys failed to comply with their obligation to operate under their own leases came home to roost in 2008 when they tried to sell their business.

The Hennys' discussion of damages is either intentionally vague (as is the case of the settlement of the AdvanceMe, Sysco, San Antonio Federal Credit Union, and Weingarten claims), or it is unsupported by a record cite (as is the case of the alleged but not proven $251,814.33 claim by JPMorgan Chase Bank). Cross-Appellants Br. at 13. The Hennys claim that they spent money from their retirement accounts but, again, no amount appears in the record. In short, the Hennys said they were damaged; they talked about categories of damages, but they never tallied up an amount that would support the jury's verdict in the Record or in their brief to this Court.

## SUMMARY OF THE ARGUMENT

The Hennys challenge (1) the dismissal of their tortious interference claim; on evidentiary grounds; (2) the dismissal of Damon Henny's claims on limitations grounds; and (3) the dismissal of Adrienne Henny's claim for lost profits on evidentiary grounds. In the trial court, the Taylors challenged these claims on several grounds, not only on the grounds briefed by the Hennys. The Hennys have waived error on the alternative grounds for affirmance, and the Court should affirm on these alternative grounds without consideration of their merits.

Alternatively, the Court should affirm on the merits because there was no evidence of tortious interference; Damon Hennys' claims were barred by limitations under well-established law; and there was no evidence supporting lost profits by Adrienne Henny.

The Taylors also present cross points that would be alternative grounds to affirm. At the very least, a new trial must be had because there is factually insufficient evidence supporting these claims.

**ARGUMENT**

The judgment on these matters should be affirmed for the reasons stated below.

**I. FAILURE TO CHALLENGE ALL POSSIBLE GROUNDS FOR AFFIRMANCE IS WAIVER, AND THE CHALLENGED RULINGS MUST BE AFFIRMED.**

By failing to present appellate issues challenging all of the Taylors' arguments to disregard the jury's verdict (which the trial court granted), the Hennys have waived error. The judgment dismissing the claim for tortious interference, the claims against Damon Henny, and the claims for lost profits must be affirmed without reference to the merits.

Any grounds that the trial court relied upon in rendering its judgment that are not included in a party's initial brief are waived. TEX. R. APP. P. 38.1(f); *Nall v. Plunkett*, 404 S.W.3d 552, 556 (Tex. 2013). In *Nall*, the defendant obtained a no duty summary judgment on two causes of action: negligence and negligent undertaking. *Nall*, 404 S.W.3d at 554.

The plaintiff appealed and raised as the single issue that the judgment should be reversed in part because the defendant's no duty argument was not directed toward the negligent undertaking theory, therefore no grounds existed for the summary judgment on that claim. *Id.* at 554. The court of appeals reversed based on this issue, and the defendant petitioned for review.

5

In the Supreme Court, the plaintiff argued that the court of appeals had correctly decided the procedural issue and raised a new issue in the alternative that contested the merits of the defendant's argument. *Id.* at 556. The Supreme Court held (1) that the motion contained grounds for summary judgment addressed to both causes of action and (2) that the plaintiff waived argument on the merits of the grounds presented because he only raised the single, procedural issue on appeal. *Id.* at 556. The Court reversed the court of appeals and affirmed the judgment by the trial court without considering whether the trial court's rulings were correct on their merits. *Id.* at 556-57. Similarly, the Hennys have appealed the trial court's legal rulings on limited grounds, but not on all of the grounds supporting the trial court's judgment.

It is anticipated that the Hennys will argue in their Reply that the trial court's order granting the motion for judgment notwithstanding the verdict is limited in scope to the issues they have raised. CR253-56. However, an order that does not specify its legal basis must be challenged as to all possible grounds. *See MasTex N. Am., Inc. v. El Paso Field Servs., L.P.*, 317 S.W.3d 431, 446 (Tex. App.—Houston [1st Dist.] 2010), rev'd on other grounds, 389 S.W.3d 802 (Tex. 2012) (when a trial court specifies the grounds for JNOV, the appellant need only challenge those grounds). The order here did not specify the legal grounds upon which it was based.

6

The Hennys' argument would confuse fact findings with legal rulings. The court made a number of fact-findings concerning the terms of the Separation Agreement (¶¶ 1-3), the evidence supporting tortious interference (¶¶ 4-6), the application of limitations to Damon Henny's claims (¶ 7), and the evidence supporting attorneys' fees (¶¶ 8-10). CR253-55. The court then made a blanket legal ruling disregarding the verdict as to certain questions. CR255. The trial court did not state the basis for its legal ruling, did not limit the legal ruling to the fact findings, and did not reject any of the Taylors' arguments for the disregarded responses. *Id.* The order, as written, was not limited in scope.

Even if the trial court's fact findings do limit the scope of its legal ruling, the Hennys have not challenged all of the possible grounds included within the scope of those findings. CR169, 286. So, alternatively, if the orders disregarding various aspects of the verdict are to be read narrowly, they still include unchallenged grounds for affirmance and must be affirmed under the *Nall* decision.

In short, the Hennys have not challenged all of the possible grounds for affirmance as to tortious interference, lost profits, and the statute of limitations. Therefore, this Court should affirm the judgment without considering the merits.

**A.     The Taylors Challenged the Jury Verdict for Tortious Interference with Contract on Multiple Grounds.**

In addition to the Hennys' evidentiary arguments concerning knowledge and intent, causation, and damages, the Taylors' justified refusal to execute the

7

assignments, guarantees, and lease extensions required by Weingarten meant that Plaintiffs' evidence was legally insufficient to support a verdict of tortious interference. CR186. The refusal was justified based on the freedom to contract. *Id.* The trial court held that the Taylors had no contractual duty to consent to the assignments, the continuing guaranties, or to the amendment adding five years to the lease for the Kirby location. CR253-54. Therefore, the trial court's judgment could be affirmed on the basis of justification. The Hennys did not challenge this legal ground for affirmance of the judgment in their brief. Cross-Appellants Brief at 17-23.

If the trial court order is broad in scope, the Taylors asserted many other grounds for a judgment notwithstanding the verdict as to tortious interference. CR180-186. The Hennys have not challenged these other grounds.

Even if the Hennys' evidentiary arguments concerning tortious interference had merit (and they do not, *see infra*, pp. 11-15), the take nothing judgment on the claim for tortious interference could be affirmed on one or more of these unchallenged grounds. *Nall*, 404 S.W.3d at 556-57. Therefore, the Court should affirm without consideration of the merit. *Id.*

**B.    Even if There Were Some Evidence of Lost Profits, the Verdict Still Must Be Disregarded on the Other, Unchallenged Grounds.**

The Taylors challenged the lost profits verdict in favor of Adrienne Henny on other evidentiary grounds in addition to the evidence of the actual amount of

8

lost profits, which Adrienne Henny challenges. These other evidentiary grounds fall within the scope of the trial court's order.

> The court finds that there was legally insufficient evidence that Adrienne Henny suffered lost profits from the operation of Cayennes Restaurant or the failure of the sale of [the Bayou Cafe].

CR286. This order encompasses elements of both the amount of damages and causation.

The Taylors argued at trial that (1) there was no evidence of causation, CR189 and (2) that evidence of lost profits should be excluded for failure to specifically plead or as a discovery sanction for failing to respond to disclosures, CR192; 2RR7-8. All of these arguments, if accepted, would support the trial court's decision. CR286. Adrienne Henny has not challenged these alternative grounds for affirmance of the take nothing judgment on lost profits by raising an issue in her Cross-Appellants' Brief.

Even if Adrienne Henny could establish that there is some evidence of the amount of lost profits (and she does not, *see infra*, pp. 18-22), the take nothing judgment on her claim of lost profits could be affirmed on one or both of these alternative grounds. *Nall*, 404 S.W.3d at 556-57. Therefore, the Court should affirm without considering the merits of these unchallenged legal positions. *Id.*

**C. The Judgment Against Damon Henny Must Be Affirmed on the Alternative, Unchallenged Grounds.**

In addition to the issue briefed by the Hennys (the statute of limitations), Damon Henny's claims were also challenged on numerous other grounds, including (1) there was no breach of the separation agreement by the Taylors, CR172; (2) he lacked standing to bring a claim for tortious interference, CR180; (3) his claim sounded in contract if at all, CR181; (4) the Taylors did not interfere as a matter of law, CR182-86; (5) any interference was justified, CR 186; (6) discovery abuse resulted in the exclusion of all damage evidence, CR187; (7) lack of causation, CR189; (8) failure to specifically plead damages barred claims on those damages, CR192; (9) various legal bars existed as to damages, CR193-95; and (10) there is no evidence of loss of credit reputation, CR198. Damon Henny has not raised an appellate issue as to any of these alternative grounds for affirmance.

Even if Damon Henny's argument concerning the statute of limitations had merit (and it does not, *see infra*, pp. 15-17), the take nothing judgment on all of his claims could be affirmed on these alternative grounds. *Nall*, 404 S.W.3d at 556-57. Therefore, the Court should affirm without considering the merits of these unchallenged legal positions. *Id.*

## II. IF THE MERITS OF THE HENNYS' APPELLATE ISSUES ARE CONSIDERED, THE JUDGMENT STILL MUST BE AFFIRMED.

If the trial court's ruling were to be reviewed solely on the limited issues raised by the Hennys, it must be affirmed.

### A. The Tortious Interference Claim Was Properly Dismissed.

The premise of the Hennys claim is that the Taylors' refusal to execute the lease assignment, the continuing guaranties, and the lease extension caused Coozans and/or the Bayou Cafe to fail in August 2008 and caused Coozans to opt out of the February 2008 Asset Purchase Agreement. 4RR138.

### 1. There is no evidence of intentional interference.

The Hennys cannot show an intentional interference with the Asset Purchase Agreement. The Hennys' argument that there was evidence of interference is based on the premise that the Taylors' refusal to participate in the assignment of the lease from Cayennes Restaurant to the Bayou Cafe "made the Hennys' performance impossible" in the Asset Purchase Agreement. Cross-Appellant's Brief at 19. There are several problems with this position.

First, there is no evidence that the Taylors were notified of the existence of the Asset Purchase Agreement, much less that they had the power to frustrated its consummation. Indeed, the earliest that they could have been aware of the details of the assignments, guarantees, and lease extension under the record was after Weingarten's offer to accept these new lease documents had expired.

11

DX17:10RR71, 89. Therefore, there is no evidence to support a finding that the Taylors knew about the terms of the Asset Purchase Agreement, how the assignments, continuing guarantees, and lease extension related to the Agreement, or how they might interfere with the transaction. *See Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992).

In *Southwestern Bell*, Justice Hecht distinguished between the intent to take (or refuse to take) action, which is not tortious, and the knowledge that "the consequences [of his act] are substantially certain to result from it," which may be tortious. *Id.* In that case, the defendant intentionally failed to timely relocate its facilities, but this intent was not sufficient. *Id.* The plaintiff must prove that the defendant "believed that interference was substantially certain to result from its actions." *Id.*

In that case, there was apparently no evidence and certainly no finding by the jury that the defendant was aware of terms of the plaintiff's contract or of the difficulties that its conduct may have caused. *Id.* at 471-72. The Texas Supreme Court held "it does not follow, however, from Bell's relocation of its facilities that it intended to interfere with Carlo's contract." *Id.* at 472. Similarly, there is no evidence here that the Taylors were aware of the terms of the Asset Purchase Agreement so that they could know with substantial certainty that their failure to

sign the new Weingarten lease documents would allow Coozans to withdraw from the sale.

Second, the record shows that Adrienne Henny was a vice-president and secretary of Cayennes, and Damon Henny was a director.  PX13 (7RR21, 39).  As an officer twice over, nothing prevented Adrienne Henny from executing the lease assignment on behalf of Cayennes.  TEX. BUS. ORG. CODE § 3.103 (officers "shall perform the duties in the management of the entity and have the authority as provided by the governing documents of the entity or the governing authority that elects or appoints the officer.").  Thus, it was not "impossible" for Adrienne Henny to make the assignment in her official corporate capacities without the need for Denise Taylor's participation.

There was no evidence presented by the Hennys that the Taylors interfered with the Asset Purchase Agreement or that any interference would have been intentional.

### 2. Causing a person to exercise a contractual right is not interference.

Evidence that the Taylors may have caused Coozans to exercise its contractual right to cancel its purchase of the Bayou Cafe is not evidence of interference.  *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).  The Bayou Cafe agreed in the Asset Purchase Agreement that Coozans would not be bound in the event the purchase could not be completed.  PX2

13

(9RR5, ¶ 7.02). Thus, even if the Cayennes to Bayou Cafe lease assignment were "impossible" without Denise Taylor's signature, her refusal merely allowed Coozans to invoke its contract rights. Thus, it had no more effect than to give Coozans the right to opt-out of the Asset Purchase Agreement, a right to which the Bayou Cafe had agreed. There is no evidence that interference caused any harm to the Hennys.

### 3. There is no evidence that the Hennys suffered damages as a result of the alleged interference.

The $400,000 awarded by the jury to Adrienne Henny as the lost benefit of the bargain has no connection to any evidence of any actual loss established in the record.

The evidence established that Coozans paid the cash portion of the purchase price in full and that it assumed operation of the restaurants, including taking responsibility for servicing the liabilities of the company from the accounts for the new company that were funded by Bruce Pollack. 5RR48; 3RR147-48. The Hennys state that when Coozans terminated the purchase in August 2008, some amount of debt remained. 4RR139-42. But they do not specify what that amount was or what it cost Adrienne Henny, if anything, to retire it. *Id.*

Damon Henny likewise did not present legally sufficient evidence of mental anguish. His statement that he suffered "heartache" due to the difficulties in wrapping up the business is legally insufficient to support a mental anguish award.

14

*Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (requiring evidence of the nature, duration, and severity of mental anguish).  There was no evidence of mental anguish that was sufficient under Texas legal standards even if it were a proper measure.

### B.   Damon Henny's Claims Were Not Asserted until Trial, Long after Limitations Had Expired.

The only attempt to plead a cause of action on behalf of Damon Henny did not occur until May 24, 2013, a few days before trial, when his attorneys filed a motion to adopt the pleadings of Adrienne Henny.  Supp.CR91.  Assuming that his motion had the effect of making a claim (which it did not, *see infra* pp. 25-26), his claims were barred by limitations.

The Hennys made their demand on May 28, 2008, almost five years before the earliest date that Damon Henny arguably attempted to assert a cause of action. His tortious interference and breach of contract claims were barred on that date. TEX. CIV. PRAC. & REM. CODE §§ 16.003(a), 16.051; *First Nat'l Bank v. Levine*, 721 S.W.2d 287, 289 (Tex. 1986) (tortious interference is governed by a two-year statute); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (breach of contract is governed by a four-year statute of limitations).  DX17:10RR69; PX24:7RR41.

Contrary to the Hennys' argument, this defense was not waived, it was pleaded in Defendants' First Supplemental Answer.  CR80.  Leave to file the

supplemental answer was granted. CR252. The defense was not waived by any failure in the Taylors' pleadings.

Furthermore, the Taylors did not waive the defense by seeking to join Damon Henny as an involuntary third party plaintiff, and there is no authority cited by the Hennys that supports waiver or estoppel. To show estoppel, Damon Henny must present evidence that the Taylors (1) accepted a benefit under a transaction, (2) are now taking a position that is inconsistent with the position they took in accepting the benefit, and (3) that it is unconscionable to allow them to do so. *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Damon Henny does not establish any of these elements, but the failure with regard to the second is most obvious.

Though unconventional, the Taylors' motion to join Damon Henny was a calculated strategic choice that required his claims, if any, to be adjudicated at the same time that Adrienne Henny's claim were presented. Supp.CR62. He chose not to pursue any claims. *See infra* pp. 25-26. The Taylors never took the position that Damon Henny's claims were not barred by limitations. Supp.CR61-63. The purpose of the tactic was to avoid a second trial and to allow the dispute to be finally resolved by obtaining a ruling on Damon Henny's claims, whatever they might be. Supp. CR62. It accomplished this purpose when the trial court agreed that Damon Henny's claims were barred by limitations. CR254.

16

Finally, Damon Henny's claims did not relate back to the original filing date by Adrienne Henny. First, his motion to adopt Adrienne Henny's causes of action was never granted, and his amended petition was never filed. But more importantly, a new party does not get the benefit of the relation back rule. *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 400 (Tex. 2011). Both of the cases cited by the Hennys involved the original party asserting a new cause of action. *Cram Roofing Co., Inc. v. Parker*, 131 S.W.3d 84, 88-89 (Tex. App.—San Antonio 2003, no pet.); *Milestone Props., Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 115-18 (Tex. App.—Austin 1993, no writ). Neither case is applicable.

This Court has recognized that "[g]enerally, 'an amended pleading adding a new party does not relate back to the original pleading.'" *Control Solutions, Inc. v. Gharda USA, Inc.*, 394 S.W.3d 127, 166 (Tex. App.—Houston [1st Dist.] 2012, pet. filed) (quoting *Univ. of Tex. Health Sci. Ctr. at San Antonio*, 332 S.W.3d at 400). While misnomer is an exception, Damon Henny was not misnamed as Adrienne Henny in the original petition, and the Hennys did not propose that he be substituted as the proper plaintiff as is the procedure in misnomer cases. *Id.*

Thus, the premise of Damon Henny's relation-back argument is entirely unsupported by any cited law, is contrary to Texas Supreme Court law, and Damon Henny does not provide any argument for the extension, modification, or reversal

17

of this existing law. Damon Henny's claims were properly dismissed as barred by the applicable statutes of limitations.

### C. Adrienne Henny Did Not Establish Lost Profits with the Necessary Specificity.

Recognizing that the lost profits verdict was fatally flawed, the trial court granted the Taylors' motion to modify and eliminated $165,000.00 from the judgment. The order encompasses all of the Taylors' legal bases for elimination of the lost profits verdict: (1) that the evidence of lost profits offered was insufficient and (2) that there was insufficient evidence of causation. CR286. As argued above, the Hennys raise only the first issue before this Court, but the evidence is insufficient under either defensive theory.

#### 1. There is legally insufficient evidence of lost profits.

The Asset Purchase Agreement alone (which is the only evidence cited by the Hennys) is insufficient evidence of lost profits. The Asset Purchase Agreement purchase price was $547,730.00. PX2:7RR5. The price was paid by a cash payment ($34,160.00), assumption of debt ($505,876.76)), and 600 shares of Coozans stock. PX2:7RR6, 8RR32. The cash and debt assumption totals $540,036.76, leaving very little that could be attributed to establish the value of the stock at the time of the asset purchase. In any event, loss of the value of stock is not lost profit.

The Hennys do not explain where these lost profits come from or how they are calculated. It is clear, however, that their "lost profits" could not be the loss of income attributable to the 600 Coozans shares. PX2:7RR6. Lost profits must be shown with reasonable certainty and by competent evidence. *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010). Competent evidence must be based on objective facts, figures, and data that allows one complete calculation. *Id.*; *see also Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). The evidence may not be speculative. *Texas Instruments, Inc. v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 279 (Tex. 1994).

The Asset Purchase Agreement does not specify the profits that Adrienne Henny could expect to earn from her portion of the 600 shares of stock. PX2:7RR5. The Hennys' statement of facts discusses mitigation costs in very general terms, but it does not attempt to show any lost profits from the loss of the stock. Indeed, there was no testimony, expert or otherwise, as to the stock value, the profit that was expected from Adrienne Henny's share of the 600 shares, or as to the Coozans' prospects for profitability. Nonetheless, the jury gave a verdict of lost profits in the past (*i.e.*, lost profits between February 2008 and the day of trial) of $165,000. CR154. The trial court properly disregarded this verdict.

Adrienne Henny did offer a loan application purportedly showing the Bayou Cafe's past profits of $109,000 in 2006. PX2:9RR17. But when taxes and debt

19

service are subtracted, the Bayou Cafe showed a final profit of only $19,132 for that year. PX2:9RR17. Adrienne Henny did not provide one complete calculation that explained how this $19,132 actual profit in 2006 would have grown after the Asset Purchase Agreement was signed such that her interest in the 600 shares of stock, if any, would accumulate profits of $165,000 between the February 2008 sale of the Bayou Cafe and the trial in May 2013. *ERI Consulting*, 318 S.W.3d at 876 (must show one complete calculation). Without such a calculation, there is no evidence of lost profits.

For example, the Hennys cite no evidence of the ownership percentage that the Hennys held in Coozans so that Adrienne Henny's share of the company's profitability could be measured. Even if her ownership percentage could be established, the Hennys cite no evidence that Coozans was earning a profit in 2008, whether that profit would continue into 2009, 2010, 2011, 2012, and 2013, or whether that profit would be distributed to the shareholders during those years, if ever. Adrienne Henny not only did not provide a calculation or a formula, she did not provide the evidence necessary to make a calculation.

2. **Even if the Taylors should have executed the assignment, the Asset Purchase Agreement still would have failed.**

The Taylors have set this argument out in full in their Brief of Appellants. *See* Brief of Appellants at 16-21. In short, Adrienne Henny cannot establish that the Taylors' action caused her any harm.

Weingarten conditioned its consent to consummation of the Asset Purchase Agreement on Denise Taylor's agreement to guaranty the new lease and on her agreement to a five year lease extension at the Kirby location, not just on her agreement to execute the assignment from Cayennes to the Bayou Cafe. DX17:10RR71, 89. The trial court held that the Separation Agreement's terms did not require Denise Taylor to execute the continuing guaranty or the lease extension. CR253-54. This holding has not been challenged on appeal.

There is no causation if a loss would have occurred even in the absence of a breach. *Employees Retirement Sys. of Tex. v. Putnam, LLC*, 294 S.W.3d 309, 319 (Tex. App.—Austin 2009, no pet.); *Jackson v. Henderson*, 2004 WL 1631394, at *4-5 (Tex. App.—Houston [1st Dist.] July 22, 2003, no pet.). Weingarten would not have consented if the Taylors had executed only the assignment and nothing more. Thus, the transaction would have failed even had Denise Taylor executed the initial assignment (*i.e.*, from Cayennes to the Bayou Cafe). This inevitable failure destroyed any causal link.

Furthermore, Weingarten's offer had lapsed before the Hennys sent the documents to the Taylors. DX17:10RR71, 89. Even if the Taylors had the obligation under the Separation Agreement to execute all of the Weingarten lease documents (the assignment from Cayennes to the Bayou Cafe, the lease extension, and the continuing guaranties), their compliance would have achieved nothing

21

because the option had already expired. *See Voss Road Exxon LLC v. Vlahakos*, 2011 WL 2623989, at \*7 (Tex. App.—Houston [1st Dist.] June 30, 2011, no pet.). Weingarten required the documents to be executed and returned by May 5, 2008. DX17:10RR71, 89. Adrienne Henny did not send the documents to the Taylors until May 28, 2008, three weeks after the option expired. DX17:10RR69; PX24:7RR41. If the Taylors had executed the documents on the day they were received, the transaction would still have failed.

Finally, there is no causative link between the Taylors conduct and any harm to Adrienne Henny because she lacked standing to bring the claim. Brief of Appellants at 19-21. The 600 shares of Coozans stock was promised to the Bayou Cafe. 5RR15-17; PX2:7RR5. Harm to a corporate entity does not cause harm to the shareholder that may be recovered personally. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). This claim, if viable, belonged to the Bayou Cafe, not to Adrienne Henny.

Alternatively, the evidence is legally insufficient to show that she suffered direct harm. *ERI Consulting Engineers, Inc.*, 318 S.W.3d at 876. There is no evidence that the restaurants failed in August 2008 for any reason other than their abandonment by the Hennys. The lease on the Kirby location did not expire until early 2009. PX2:9RR45. In any event, even without the Kirby location, the Bayou

22

Cafe had three other locations (FM 1960, Fondren, and Uvalde). 3RR171-72.

Adrienne Henny did not show that her harm was caused by the Taylors' conduct.

## III. ALTERNATIVELY, THE JUDGMENT SHOULD BE AFFIRMED ON THE OTHER GROUNDS SUBMITTED BY THE TAYLORS.

Without waiving their right to insist that the Hennys challenge all of the possible grounds for affirmance in their initial brief, the Taylors present these cross-points supporting affirmance.

### A. Plaintiffs' Tortious Interference Claims Are Not Viable.

Neither Damon Henny nor Adrienne Henny can recover for tortious interference even if they were able to show some evidence of intent or damages.

### 1. Plaintiffs' claims sound in contract, not in tort.

A claim for tortious interference with an existing contract or with prospective contractual relations cannot be based on the breach of a contractual duty. In other words, if the act of interference violates a contract duty rather than a legal (*i.e.*, tort) duty, then only the contract claim is viable.

> If the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily only sounds in contract.

*DeWitt County Elec. Coop. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999); *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991); *Exxon Mobil Corp. v. Kinder Morgan Oper. L.P.*, 192 S.W.3d 120, 126-27 (Tex. App.—Houston [14th

23

Dist.] 2006, no pet.). In short, there is no tort liability for nonfeasance, that is, for failing to perform under a contract. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996).

The only duty that the Hennys argue that was breached by the Taylors was a supposed contractual duty under the Separation Agreement. Assuming for the sake of argument that a contractual duty exists in the Separation Agreement that required the Taylors to execute the assignments, the lease extension, and the guaranties, the very existence of such a duty under contract would foreclose the Hennys' tort claim for interference with contract.

### 2. The Hennys had no standing to assert the tortious interference claim.

The Hennys claim that the Taylors interfered with the Asset Purchase Agreement. But shareholders cannot recover damages personally for a wrong done to the corporate entity. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *Singh v. Duane Morris, L.L.P.*, 338 S.W.3d 176, 182 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Kenneth H. Hughes Interests, Inc. v. Westrup*, 879 S.W.2d 229, 235 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Voss Road Exxon LLC v. Vlahakos*, 2011 WL 2623989, *5 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This is true even if the shareholders suffer a loss indirectly due to the injury to the entity. *Wingate*, 795 S.W.2d at 719.

24

The Asset Purchase Agreement was between the Bayou Cafe and Coozans. DX 16. The Bayou Cafe was a distinct entity from the Hennys. TEX. BUS. ORG. CODE § 2.101. Thus, the Hennys are not a party to the Asset Purchase Agreement and cannot sue for tortious interference with that agreement.

**B.      None of Damon Henny's Claims Are Viable.**

The judgment that Damon Henny take nothing is supported by several alternative grounds that must be considered if the Court holds that the statute of limitations does not bar his claims.

### 1.      Damon Henny did not plead any claims.

Damon Henny did not plead any causes of action. CR21, 43; 4RR146-47; 5RR156-59. He admitted at trial that he was not asserting any claims against the Taylors.

Q.      Okay. And you haven't asserted any claims in this lawsuit, correct?

A.      I haven't.

4RR149. The record bears this out.

His attorneys requested permission to file an amended petition on the eve of trial, but the trial court never granted leave for the untimely filing. The Fifth Amended Third Party Petition was not filed, was not accepted, and does not appear in the Clerk's Record. Supp.CR111.

25

His attorneys also moved to adopt Adrienne Henny's pleadings. Supp.CR91. The trial court considered this motion, but it never ruled, ultimately deciding to defer the issue until after the verdict and agreeing that the issues were not tried by consent. 5RR152-162. After the verdict, the Court did not grant either motion and disregarded the jury's findings in favor of Damon Henny. CR253. Thus, this defect in Damon Henny's claims was raised before the trial court and constitutes an independent ground for affirmance.

### 2. There was no breach; the Separation Agreement did not require the Taylors to sign the Weingarten documents.

It was not the Taylors who had the responsibility under the Separation Agreement to establish, operate, or manage the Hennys' restaurants (*i.e.*, the Bayou Cafe). Rather, the Separation Agreement required the Hennys to remove Cayennes from the leases at Kirby and FM 1960.

> It is agreed all administrative changes, including but not limited to contacting vendors, employees and/or any necessary third parties, will be completed by February 1, 2006.
>
> . . .
>
> It is further agreed all parties will establish new company identities by March 31, 2006 to properly dissolve the existing corporation. After March 31, 2006 no party will use the Cayenne Restaurant name, identity or logo in any form.

PX 1:7RR2-3. In short, the Separation Agreement required the Hennys to take all the steps necessary to accomplish the separation of their business from Cayennes, including removal of Cayennes from the leases. PX1:7RR2.

The Hennys were responsible for administrative changes at their business. They agreed that they would "operate, manage and own" the two restaurants that became the Bayou Cafe. PX1:7RR2-3. They also agreed that they would "assume operation, management, administration and ownership . . . upon approval of this document." PX1:7RR2-3. Coupled with the obligation to cease using the Cayennes name, the Hennys were responsible for operating under their own leases, not the leases in Cayennes' name that were guaranteed by Denise Taylor. Furthermore, the Hennys, not the Taylors, had operational and administrative control of the Bayou Cafe at the time the administrative changes provision was to be performed. PX24:7RR41; DX17:10RR69; PX1:7RR2.

In short, the Hennys took control of the Bayou Cafe restaurants in December 2005. By continuing to operate the restaurants for over two years under a lease in the name of Cayennes, the Hennys failed to perform their obligations to make administrative changes, to notify Weingarten, and to cease doing business under the name of Cayennes. The Taylors did not breach the Separation Agreement by failing to perform a task that was the Hennys' responsibility to complete or in refusing to cooperate in a scheme that would not accomplish the removal of Cayennes from the lease. Indeed, it is the Taylors, and not the Hennys, who have a grievance here.

### 3. There is no causation when the harm would have occurred regardless of the Taylors' actions.

A loss is not caused by a breach when the loss would have occurred even in the absence of the breach. *See Employees Retirement Sys. of Tex. v. Putnam, LLC*, 294 S.W.3d 309, 319 (Tex. App.—Austin 2009, no pet.); *Jackson v. Henderson*, 2004 WL 1631394, at *4-5 (Tex. App.—Houston [1st Dist.] July 22, 2004, no pet.); *see also Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981). Even if the Taylors' failure to execute the assignment from Cayenne to the Bayou Cafe was a breach, the Asset Purchase Agreement would still have failed.

Here, the asset purchase was conditioned on Coozans' ability to assume the leases. PX2:9RR5. Weingarten would only agree to the assumption if the Taylors remained obligated. Thus, execution of the assignment alone was not sufficient to ensure that the asset purchase would be completed.

According to Weingarten, the Taylors had to (1) assign Cayennes Restaurants' leases to the Bayou Cafe, (2) agree to a five-year lease extension for the Kirby location, and (3) sign a continuing guarantee of both amended leases. DX17:10RR71, 89. The trial court held that the Separation Agreement does not require the Taylors to assume new obligations such as the extension or the guaranty. CR253. Damon Henny does not challenge this holding.

Because Damon Henny would have suffered the loss of the bargain with Coozans whether the Taylors executed the assignment or not, there is no causation.

28

**4. Because the Bayou Cafe's option expired before the Taylors were asked to execute the documents, there is no causation.**

There also was no causation because the option period had expired on Weingarten's offer before a demand was made to the Taylors. On April 14, 2008, Weingarten made an offer to the Bayou Cafe of a new bargain on each lease (Kirby and 1960), but specified that "time is of the essence" and warned that its offer expired if the lease amendment, guaranties, and assignments were not executed by May 5, 2008. DX17:10RR71, 89.

Damon Henny did not send a copy of the lease amendments, guaranties, and assignments to the Taylors until May 28, 2008, over three weeks after the offer expired. DX17:10RR69; PX24:7RR41. When an option has expired, another party's conduct occurring afterwards could not cause a loss of the opportunity. *See Voss Road Exxon LLC*, 2011 WL 2623989, at \*7. The Taylors' conduct could not have caused damages under the contract because Weingarten's offers had expired long before the Taylors could have even seen what they were being asked to do. *Id.*

**5. Damon Henny could not establish damages for loss of credit or for mental anguish.**

To establish damages for a loss of credit reputation, Damon Henny had to present evidence (1) that he was denied a loan and that failing to obtain the loan caused an economic loss, or (2) that he obtained a loan and paid a higher interest

29

rate because of their diminished credit. *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53 (Tex. 1998). Mere loss of credit reputation is not compensable. *Id.*; *see also Provident Am. Ins. Co. v. Casteneda*, 988 S.W.2d 189, 199 (Tex. 1998).

Damon Henny gave no testimony concerning a loss in credit reputation. *See* 4RR121-148. But the Texas Supreme Court requires particular proof of the elements of a claim for loss of credit. *Casteneda*, 988 S.W.2d at 199. He did not testify that the inability to get a credit card caused an economic loss or that he had paid a higher interest rate on a loan. *Id.* There is no evidence of damages for a loss of credit reputation by Damon Henny, only argument. 6RR63.

As for his mental anguish verdict, Damon Henny simply cannot recover mental anguish damages, even if he had presented evidence of such damages, which he did not. *See supra*, pp. 14-15. Mental anguish damages are not available in a tortious interference with contract claim. *Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 486 (Tex. App.—Houston [14th Dist.] 1996, no writ); *Soukup v. Sedgwick Claims Mgmt. Servs.*, 2012 WL 3134223, at *6 (Tex. App.—Houston [1st Dist.] Aug. 2, 2012, pet. denied). Therefore, the jury finding of mental anguish by Damon Henny was properly disregarded.

### C. Adrienne Henny Cannot Recover the Lost Profits Verdict.

Even if the evidence presented at trial were some evidence of lost profits, the evidence must be excluded and the judgment affirmed. Adrienne Henny forfeited her right to present her damage model when she failed to provide her calculation of damages in response to the Taylors' timely request for disclosure. CR210, 215, 244, 247.

The rules governing requests for disclosure are intended to frustrate "legal gamesmanship and trial by ambush." *$ 27,877.00 Current Money of U.S. v. State*, 331 S.W.3d 110, 120-21 (Tex. App.—Fort Worth 2010, pet. denied). The verdict in this case is tainted by the Adrienne Henny's disregard for her obligations under the disclosure rules.

> Disclosure is designed to afford parties basic discovery of specific categories of information . . . . [A] failure to respond fully to a request for disclosure would be an abuse of the discovery process.

TEX. R. CIV. P. 194 (cmt. 1).

The remedy for failing to respond in a timely manner to a discovery request, including a request for disclosure, is automatic exclusion of the evidence. TEX. R. CIV. P. 193.6(a); *Moore v. Memorial Hermann Hosp. Sys.*, 140 S.W.3d 870, 875 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Adrienne Henny's responses to the Taylors' request for disclosures did not specify the amount and method of calculating the economic damages, as requested.

CR:210, 215, 244, 247; *$27,877.00 Current Money of U.S.*, 331 S.W.3d at 120-21

(citing *State Farm Fire & Cas. Co. v. Morua*, 979 S.W.2d 616, 619-20 (Tex.

1998)).  The trial court agreed:

> There is no way that this could be an acceptable Pleading under our
> Rules of Procedure.  I don't know that you have an argument with me
> on that.

3RR 9.  A response lacking substance is a complete failure to respond, triggering

the automatic exclusion.  TEX. R. CIV. P. 193.6.

With the testimony and exhibits offered to support Adrienne Henny's

untimely damage model excluded automatically, there is no evidence of damages

and judgment should be rendered that Adrienne Henny take nothing.  *See Tiller v.*

*McLure*, 121 S.W.3d 709, 713 (Tex. 2003).

**IV.  ALTERNATIVELY, THERE IS NO FACTUALLY SUFFICIENT EVIDENCE SUPPORTING THE JURY'S VERDICT, AND A NEW TRIAL IS NECESSARY.**

The Hennys' trial strategy in this case was to overcome their lack of

evidence that the Taylors did anything wrong by creating prejudice and bias

against the Taylors in the minds of the jury.  A keystone of the Hennys' jury

argument concerned their allegation that Denise Taylor embezzled funds when she

managed Cayennes Restaurants in 2005, a claim that the Hennys did not plead and

that was resolved in the Separation Agreement.   3RR38-41, 65-85, 132-33;

4RR122-30.

The Hennys' focus on the 2005 dispute had nothing to do with whether the Separation Agreement required the Taylors to execute the lease assignment or whether their failure to do so caused the Hennys any harm. But it did enrage the jury against the Taylors, and it did paint them as untrustworthy. And when the Hennys' counsel told the jury how to answer the charge questions, the jury complied without regard to the evidence.

**A.     There Was No Factually Sufficient Evidence that the Taylors Tortiously Interfered with the Asset Purchase Agreement.**

When all of the evidence is considered, the Hennys can only establish that the Taylors were asked (at some unspecified date) to execute an assignment to Coozans or (on May 28, 2008) to execute the Weingarten instruments and that the Taylors refused. 4RR138; DX17:10RR69. The evidence also shows that Weingarten offered to agree to an assignment from Cayennes to the Bayou Cafe and to Coozans, but only if the Taylors would (1) execute the assignment from Cayennes to the Bayou Cafe, (2) agree to a five year extension of the Kirby location, and (3) sign a continuing guaranty. DX17:10RR71. Of course, Cayennes was to remain obligated on the lease in violation of the Hennys' promises in the Separation Agreement. *Id.*; PX2:7RR2. Weingarten's offer expired on May 5, 2008. *Id.* The Hennys delivered Weingarten's terms and the required instruments to the Taylors or to the Taylors' agent on May 28, 2008. PX24:7RR41; DX17:10RR69. The Hennys' claim for interference is based on the Taylors'

33

refusal to alter the terms of the Separation Agreement to allow Coozans to continue the Bayou Cafe's practice of using Cayennes' name.

As for the unliquidated tortious interference damages, they too are unsupported by factually sufficient evidence.[1] The only evidence in the record is that some amount of the Bayou Cafe's debts remained in August 2008 when Coozans opted out of the Asset Purchase Agreement. 4RR39-42. There is no statement in the record establishing what that amount was or what the Hennys paid, if anything, to satisfy it. *Id.*

This evidence is legally insufficient to establish a claim for tortious interference, or the claim is legally barred. *See supra*, pp. 11-15, 20-25. However, if the Court is of the opinion that there is some evidence, then the Taylors argue that it is still factually insufficient to support the verdict that the Taylors tortiously interfered with the Asset Purchase Agreement or suffered any specific amount of damages. The Taylors conditionally request a new trial on these questions.

**B.    There Was No Factually Sufficient Evidence to Support the Jury's Verdict of Lost Profits.**

When all the evidence is considered, there is evidence that the Bayou Cafe earned a final profit (after all expenses were deducted) of $19,132 in 2006. PX2:9RR17. There is evidence that the Bayou Cafe was to receive 600 shares of

---

[1]    In any event, they would have to be reversed and remanded for new trial along with the liability issue as the two elements are not separable. TEX. R. APP. P. 44.1(b); *Ritchie v. Rupe*, 443 S.W.3d 856, 908 (Tex. 2014).

Coozans stock, and that Adrienne Henny was one of the owners of the Bayou Cafe. PX2:7RR6. There is also evidence that one of the four Bayou Cafe restaurants was failing in February 2008. 3RR171. The jury awarded lost profits in the past (*i.e.*, from approximately February 2008 until May 2013) of $165,000. CR154.

As argued above, *see supra* pp. 18-22, 30-31 this evidence is legally insufficient to provide one complete calculation of lost profits for the time period before trial or should be disregarded for other reasons. At the very least, this evidence is factually insufficient to show that Adrienne Henny suffered lost profits of $165,000. Therefore, the Taylors conditionally request a new trial on the question of lost profits.

C. **There Was No Factually Sufficient Evidence to Support the Jury's Verdict in Favor of Damon Henny.**

As argued above, *see supra*, pp. 11-17, 23-30, there is legally insufficient evidence to support the jury's verdict in favor of Damon Henny or that verdict was legally barred in whole or in part. Alternatively, the evidence was factually insufficient, for the reasons discussed above to support the verdict in favor of Damon Henny. *Id.* Therefore, the Taylors conditionally request a new trial on the jury's verdict in Questions Number 3, 4, 7, and 8.

**PRAYER**

WHERFORE, PREMISES CONSIDERED, Appellants/Cross-Appellees Oscar D. Taylor and Denise Taylor respectfully request that this Court affirm the

35

trial court's judgment dismissing all tortious interference claims, all of Damon Henny's claims, and Adrienne Henny's claim for lost profits. The Taylors also request all of the relief prayed for in their Brief of Appellants. Alternatively, the Taylors conditionally request a new trial on one or all of these questions. The Taylor also ask for all such other and further relief to which they might be entitled at law or in equity.

Respectfully submitted,

**JOHNSON, TRENT, WEST & TAYLOR, L.L.P.**


By:   */s/ Douglas Pritchett, Jr.*
     Douglas Pritchett, Jr.
     Texas Bar No. 24007877
     dpritchett@johnsontrent.com
     919 Milam, Suite 1700
     Houston, Texas 77002
     (713) 222-2323 – Telephone
     (713) 222-2226 – Facsimile

     **ATTORNEYS FOR APPELLANTS**
     **OSCAR D. TAYLOR AND**
     **DENISE TAYLOR**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B) because the brief contains 8,157 words, excluding the parts exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

This brief complies with the typeface and type style requirements of Texas Rule of Appellate Procedure 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font for text in the body and 12-point Times New Roman font for footnotes.

*/s/ Douglas Pritchett, Jr.*
Douglas Pritchett, Jr.

## CERTIFICATE OF SERVICE

On this the 22nd day of January 2015, the foregoing Response of Cross-Appellees/Appellants was served on the following persons by electronic service:

Eric G. Carter
THE CARTER LAW FIRM
1811 Southmore Boulevard
Houston, Texas 77004
(713) 227-0042 (Telephone)
(713) 227-7001 (Facsimile)
*Attorney for Plaintiffs*
*Adrienne A. Henny and Damon K. Henny*

*/s/ Douglas Pritchett, Jr.*
Douglas Pritchett, Jr.

387398

38